IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01015-PAB-KAS

ANGELA VALDEZ,
RICKY ABEYTA,
MARK FRANKLIN,
MICHAEL CHILDS, individually and on behalf of all others similarly situated,
KEATE WRIGHT, individually, and
ERIC SHORT, individually,

      Plaintiffs,

v.

UNIVERSAL LOGISTICS OF VIRGINIA, LLC., a Virginia limited liability company,

      Defendant.

---

**ORDER**

---

This matter comes before the Court on plaintiffs' Motion for Class Certification [Docket No. 19].  Defendant Universal Logistics of Viginia, LLC responded, Docket No. 51, and plaintiffs replied.  Docket No. 54.

**I.  BACKGROUND**

Plaintiffs Angela Valdez, Ricky Abeyta, Mark Franklin, and Michael Childs ("plaintiffs") bring this action against Universal Logistics of Virginia, LLC ("Universal"), individually and on behalf of members of a putative class of Universal employees ("the putative class").[1]  Docket No. 19 at 1.  Universal employed class members between

---

[1] In their motion, plaintiffs' propose class consists of "all regular full-time and/or part-time L2L drivers in Colorado who did not cross state lines during their deliveries from March 16, 2020 to December 31, 2020 and worked overtime and/or more than 2 hours on any work shift."  Docket No. 19 at 20.

March 16, 2020 and December 31, 2020 (the "relevant period"). *Id*. Universal operates

a trucking business that contracts with forty Home Depot stores across the front range

of Colorado to make deliveries on behalf of Home Depot. *Id.* at 7. During the relevant

period, each of the plaintiffs worked for Universal as a Class A flatbed home delivery-

L2L driver. *Id.* at 3. Plaintiffs allege that Universal violated Colorado law by failing to

pay them and class members overtime compensation for hours worked in excess of 40

hours per week and by failing to allow their drivers to take rest and meal breaks. *Id.* at

2. Specifically, plaintiffs allege that Universal violated Article XVIII, Section 15 of the

Colorado Constitution, the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101 et seq., and

the applicable Colorado Overtime Minimum Pay Standards Order ("COMPS Order #

36"), 7 Colo. Code Regs. § 1103-1 et seq. (2020). *Id.*

On March 16, 2020, the Colorado Department of Labor and Employment adopted

COMPS Order # 36 as an emergency action. 7 Colo. Code Regs. § 1103-1:5. This

order entitled workers to "an uninterrupted and duty-free meal period of at least 30-

minute duration when the shift exceeds 5 consecutive hours," and required employers

to permit workers to consume a meal on the job and be fully compensated for it "[w]hen

the nature of business activity or other circumstances make an uninterrupted meal

period impractical." *Id.*, § 1103-1:5.1. In addition, the order required employers to

provide a compensated 10-minute rest period for every four hours of work, beginning

when an employee has completed two hours of work. *Id.*, § 1103-1:5.2 (requiring one

ten-minute rest period when employees have completed over two and up to six hours of

work).

Under COMPS Order # 36, employers were not required to provide overtime pay or rest or meal breaks to "an employee who is a driver, a driver's helper, or a loader or mechanic of a motor carrier, if the employee crosses state lines in the course of his or her work." *Id.*, § 1103-1:2.2.6(A) (2020). This exemption remained in place from March 16, 2020 to December 31, 2020. *Id.* Plaintiffs argue that the exemption did not apply to the putative class since they did not cross state lines in the course of their work during the time the exemption was in place. Docket No. 19 at 10; Docket No. 53 at 3, ¶ 17. Because the exemption did not apply, plaintiffs claim (1) that Universal should have paid them overtime wages if they worked more than 40 hours in a week and (2) that Universal should have provided rest and meal breaks. Docket No. 53 at 11, 13, ¶¶ 78–79, 98–99.

On their claim for unpaid overtime, plaintiffs allege that putative class members were paid a daily salary of between $190 and $200. *Id.* at 3. Putative class members could also earn nondiscretionary bonuses. *Id.* Specifically, putative class members could earn the following bonuses, irrespective of their hours worked: (1) $33.33 per day if they started on time and performed their route as designated; (2) $4.00 for every 15 minutes they were delayed by a customer or store if they were delayed more than 30 minutes; and (3) $0.75 for every mile driven after the first 60  miles. *Id.* Putative class members typically worked six days per week, up to 12 hours per day. *Id.* Plaintiffs assert that "[i]t is undisputed that the Plaintiffs and the Class Members were paid according to the same pay structure, and, between March 16, 2020 and November 29, 2020, [Universal] did not pay the Class Members or the Plaintiffs an overtime premium for hours worked in excess of 40 in any workweek." Docket No. 19 at 4. Accordingly,

plaintiffs' overtime claim concerns Universal's pay policy that was in place between March 16, 2020 and November 29, 2020. *Id.*

Regarding their claims for unpaid breaks, plaintiffs allege that Universal's scheduling practices did not allow drivers to take the meal and rest breaks that they were entitled to under COMPS Order # 36. *Id.* at 5. Universal provided the plaintiffs with a daily schedule and required them to log their activity on an application called "Mobile Link." *Id.* at 4. Universal had real-time monitoring capabilities and communicated directly with drivers who failed to record their activities or missed a scheduled pick-up or delivery. *Id.* Plaintiffs claim that their schedules did not allow time for drivers to rest or take meal breaks. *Id.* at 5. In response, Universal claims that its policy was to "ensure drivers had no more than nine or ten hours of work to perform in a 12-hour shift." Docket No. 51 at 16. This scheduling practice, according to Universal, left drivers with two to three hours to take meal and rest breaks. *Id.* Plaintiffs characterize Universal's practice of scheduling drivers for nine to ten hours of work instead of twelve as offering them an "'option' to extend their days in order to take rest and meal breaks," pointing out that extending their workday "only serve[d] to reduce the amount that each [driver] earned for their time" because they were paid at a daily rate rather than an hourly one and were not paid overtime wages. Docket No. 19 at 5. Essentially, plaintiffs argue that Universal financially incentivized drivers to skip breaks because in doing so they earned a $33.33 bonus and maximized the amount they earned for each hour of work. On the other hand, Universal argues that it never told plaintiffs to skip their breaks and that it "cannot be liable if Plaintiffs simply worked continuously so they could end their days earlier." Docket No. 51 at 17.

4

## II.  LEGAL STANDARD

A district court may certify a class action if the proposed class satisfies the prerequisites of Rule 23(a) as well as the requirements of one of the three types of classes in Rule 23(b).  The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied.  *DG ex. rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004)).  In deciding whether the proposed class meets these requirements, the district court "must accept the substantive allegations of the complaint as true," but it "need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints."  *Id.* (citation and quotations omitted).

## III. ANALYSIS

### A.  Ascertainability

The Court will first consider whether plaintiff has proposed an ascertainable class.  "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class."  *Edwards v. Zenimax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012) (quotations omitted); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that "[c]lass ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)" (quotations omitted)).  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 397 (D. Colo. 2014).

In their motion, plaintiffs propose the following class:

> [A]ll regular full-time and/or part-time L2L drivers in Colorado who did not cross state lines during their deliveries from March 16, 2020 to December 31, 2020 and worked overtime and/or more than 2 hours on any work shift.

Docket No. 19 at 20.  The Court finds that the proposed class is sufficiently defined since it is "administratively feasible for the court to determine whether a particular individual is a member."  *See Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2016 WL 11697044, at *7 (D. Colo. Sept. 20, 2016) (quoting *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995)).  As Universal has not challenged the proposed class's ascertainability, the Court turns to the requirements for class certification enumerated in Rule 23.

### B.  Prerequisites of 23(a)

The Court will first consider whether plaintiffs' putative class satisfies the numerosity requirement of Rule 23(a).  Rule 23(a)(1) requires plaintiffs seeking class certification to "establish that the class is so numerous as to make joinder impracticable."  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976)).  In the Tenth Circuit, there is no set formula for determining whether a proposed class is large enough to meet the numerosity requirement.  *See id.*  Rather, the question of numerosity is a fact-specific inquiry within the broad discretion of the district court.  *Id.* The factors that are relevant to this inquiry include: "class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits."  *Colorado Cross-Disability Coal. v. Taco Bell Corp.*, 184

F.R.D. 354, 357 (D. Colo. 1999) (citing *Anderson v. Dept. of Pub. Welfare,* 1 F. Supp. 2d 456, 461 (E.D. Pa. 1998)).

It is undisputed that plaintiffs' proposed class includes at least 19 members. Docket No. 51 at 12–13; Docket No. 54 at 6.  Plaintiffs allege that there may be as many as 60 class members.  Docket No. 19 at 7.  During discovery in the *Faine* proceedings, Universal initially disclosed that there were 60 members of the proposed class.  *Id.*  Universal then amended its answer to 31, asserting that the other 29 members were independent contractors.  *Id.*  Plaintiffs have not confirmed Universal's claims about the independent contractors.  *Id.*  Plaintiffs' amended complaint states that the class consists of "approximately 30 or more" employees.  Docket No. 53 at 8, ¶ 68.a.  Universal claims that the putative class has shrunk to 19 members because some class members have individually settled with Universal and released their claims against the company.  Docket No. 51 at 2.  Plaintiffs assert that, even if the class has 19 members, the class members' geographic diversity, their transient nature and resultant difficulty in locating them, and their relative inability to institute individual lawsuits due to the small amount of potential recovery all support certifying a class of this size.  Docket No. 54 at 6.

Universal argues that this group is too small to merit class certification, but, as the Tenth Circuit has observed, "[c]lass actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."  *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978).  The fact that there may be only 19 to 31 class members remaining is not automatically disqualifying.  However, the Tenth Circuit has also affirmed a district court's denial of class certification for a class of 84

members because, although the putative class "was not insignificant, it was not such an overwhelmingly large number as to be prohibitive of joinder.  Nor was there any problem locating the remaining individuals for joinder since all the names and addresses of potential plaintiffs had been provided during discovery."  *Trevizo*, 455 F.3d at 1162.

In this case, geographic diversity is a neutral factor in finding numerosity. Plaintiffs assert that potential class members "reside across the front range."  Docket No. 19 at 7.  Although in *Taco Bell* the court noted that a class's dispersal over several counties might weigh in favor of a finding of numerosity, here, the front range is a relatively compact and cohesive geographical location that can be traversed easily by class members and plaintiffs' counsel.  *Cf. Taco Bell*, 184 F.R.D. at 358.  Reorganized

Plaintiffs assert that joinder is impracticable because the claims of class members are "relatively small," individually and collectively, and because they are seeking recovery for a period of only nine months.  *Id.* at 8.  As such, the incentive for these delivery truck drivers to pursue an individual lawsuit is not great.  *See Taco Bell*, 184 F.R.D. at 359 (finding joinder impracticable where 23.7% of class members had household incomes below the poverty level and the most that an individual member could obtain in damages was $500); *cf. Clark v. State Farm Mut. Auto. Ins. Co.,* 245 F.R.D. 478, 487 (D. Colo. 2007) (finding class certification inappropriate where plaintiff sought damages as high as $150,000, in contrast to *Taco Bell*) (citing *Taco Bell*, 184 F.R.D. at 361–62).  The Western District of New York has certified a class of 16 truckers seeking overtime wages because "[t]he small recoveries that many of the class members could reasonably expect to recover even if they prevailed on the merits makes it unlikely that, absent the benefit of class representation, they would choose to bear the

costs of individual lawsuits." *Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011).

Plaintiffs argue joinder is limited by the financial resources of class members because, by joining this litigation, class members risk their jobs or future job opportunities. Docket No. 19 at 8. However, the Colorado Wage Act prohibits retaliation against any person who has filed a complaint or instituted any proceeding under any law or rule related to wages or hours, backed by civil remedies and criminal penalties. Colo. Rev. Stat. Ann. § 8-4-120. The Act also provides for attorney's fees for successful plaintiffs. *Id.*, § 8-4-110. Additionally, the named plaintiffs have estimated their damages to be between $9,000 and nearly $20,000. *See* Docket No. 44. The incentives and potential costs for individuals seeking to recover from Universal are not as one-sided as plaintiffs claim.

The ease of identifying class members weighs against certifying the class. While plaintiffs acknowledge that Universal has provided them with the contact information for each potential class member, they argue that truck drivers are a "transient" population that is difficult to contact. Docket No. 19 at 8 (citing *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 260 n.15 (1974) ("Special problems (are) involved in determining the bona fide residence of [putative class members, because they] are characteristically transient.")). Although no court in the Tenth Circuit has addressed the question of joinder and transience, federal courts around the country have found joinder was impracticable where putative class members were members of transient populations, such as immigrants or prison inmates. *See, e.g., Opulento on Behalf of Fortson v. Dep't of Pub. Safety*, 2022 WL 2359092, at *3 (D. Haw. 2022) (finding that "the transient

nature of the proposed Class would make joinder impractical" where class members were inmates); *Reid v. Donelan,* 297 F.R.D. 185, 189 (D. Mass. 2014) (certifying a class of individuals being held in immigration detention in part because of the "transient nature of the proposed class" and the difficulty in identifying them).  The Southern District of New York has held that "the transient nature of [class members'] work" is a factor suggesting "that individual suits as an alternative to a class action are not practical."  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).  While interstate truck drivers may be transient by nature, the proposed class here consists of delivery drivers who did not cross state lines and who served only Home Depot Stores in the Colorado front range.  Docket No. 19 at 7.  The amended complaint alleged that "[e]ach Plaintiff was assigned to a Home Depot in close proximity to their home."  Docket No. 53 at 3 ¶ 19.  The putative class members are not likely to be as transient as other truck drivers.

The fact that Universal has settled with ten of the approximately 31 putative class members suggests that a large number of these drivers can be readily contacted. Docket No. 51 at 2.  Furthermore, two individuals have joined this case since its inception in response to Universal's solicitations to settle.  Docket No. 54 at 6. Additionally, seven plaintiffs have already filed suit against Universal on this matter – including the current six plaintiffs and the plaintiff in the *Faine* case.  This represents, at a minimum, over ten percent of the putative class, and may represent over thirty percent of the class that has not already settled with Universal.  *Cf. Trevizo*, 455 F.3d at 1162 (affirming denial of class certification when ten out of approximately 80 members of the

putative class "managed to file claims," despite their alleged limited English and fear of the legal system).

Given the availability of the identities and contact information for class members, as well as the proven ability for plaintiffs to join this case, the Court finds that joinder of additional persons who fall within the class is not impractical.

The putative class members' ability to initiate individual actions weighs in favor of denying certification. Plaintiffs argue that the approaching statute of limitations makes it impracticable for individual class members to file claims against Universal. Docket No. 19 at 9. The Colorado Wage Act has a two-year statute of limitations, which is extended to three years for willful violations. Colo. Rev. Stat. § 8-4-122. The filing of the class action in *Faine* suspended the statute of limitations for plaintiffs' individual claims between January 14, 2021 and February 7, 2023. Docket No. 19 at 9. As such, Universal believes that individual members of the proposed class have until January 23, 2025 to file their claims. Docket No. 51 at 9. The Court finds that putative class members have the ability to file claims within the two-year statute of limitations.

Considering the *Taco Bell* factors, the Court finds that plaintiffs have not demonstrated the requisite numerosity to justify class certification. *Taco Bell Corp.*, 184 F.R.D. at 357. Although the class may be as numerous as 60 members, this is not such an "overwhelmingly large number" as to make class certification necessary. *Trevizo*, 455 F.3d at 1162. Furthermore, plaintiffs' amended complaint, which the Court must accept as true, alleges that the class consists of "approximately 30 or more" employees, 13 of which Universal has credibly alleged to have settled. Docket No. 53 at 8, ¶ 68.a.; Docket No. 51 at 7. Each of these class members is identifiable. Docket No. 19 at 8.

Although members of the putative class may have limited financial resources, they are sufficiently incentivized to pursue their claims given that they are seeking thousands of dollars and that the law provides for attorney's fees on successful claims.  Seven individuals have already joined wage litigation against Universal.

To certify a class action, a district court must find the proposed class satisfies the prerequisites of Rule 23(a).  Fed. R. Civ. P. 23(a).  One prerequisite is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs have failed to show the proposed class meets the numerosity requirement.  *See DG ex. rel. Stricklin*, 594 F.3d at 1194.  Therefore, the Court will deny plaintiffs' motion for class certification.

### C.  Universal's Affirmative Defense

A previous class action for the same putative class was filed against Universal in Adams County District Court on January 14, 2021, which was removed to this Court on February 22, 2021.  *See Faine v. Universal Logistics of Virginia, LLC*, No. 21-cv-00524-PAB-KLM ("*Faine*"), Docket No. 1 (D. Colo. February 22, 2021).  The plaintiff in *Faine* was represented by plaintiffs' counsel in this case and filed a motion for class certification on March 10, 2022.  *Faine*, Docket No. 43.  Before the motion for class certification was decided, the individual plaintiff reached a settlement with Universal, and, through new counsel, the plaintiff and Universal filed a joint stipulation to dismiss the action.  *Faine*, Docket No. 69.  The Court dismissed all plaintiff's claims with prejudice and the class claims without prejudice.  *Faine*, Docket No. 71.

Universal argues that the Court need not undertake a class certification analysis to resolve this motion because plaintiffs' claims are time barred.  Docket No. 51 at 7–12.

Universal argues that, under the Supreme Court's rulings in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018), and *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), plaintiffs' class action claims were not brought within the two-year statute of limitations for the Colorado Wage Act.  *Id.* at 7–10.  Universal further argues that its actions cannot be considered willful, and thus the Colorado Wage Act's three-year statute of limitations for willful violations is inapplicable to this case.  *Id.* at 10–12.  However, "[t]he statute of limitations is an affirmative defense," *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022), and "an inquiry into a claimed affirmative defense impermissibly allows an issue going to the merits of the litigation to intrude upon the class certification analysis required by Rule 23."  *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 205 F.R.D. 572, 577 (D. Colo. 2001) ("[I]t is often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses.  There is a distinction, though, between identifying the issues that the case will present for purposes of determining whether the requirements of Rule 23 have been met and deciding those issues on the merits.") (citations omitted).  The Court declines to analyze the merits of Universal's statute of limitations argument.  *Lysyj v. Milner Distribution All., Inc.*, No. 13-cv-01930-RM-MJW, 2014 WL 273214, at *4 (D. Colo. Jan. 24, 2014) ("Plaintiffs have met their burden as to conditional certification, and it is now up to Defendants at a later stage to demonstrate that Mr. Rhoads or any other putative

class members' claims should be barred . . . by the statute of limitations, or by any other

defense.").[2]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiffs' Motion for Class Certification [Docket No. 19] is

**DENIED**.  It is further

**ORDERED** that Defendants' Motion for Leave to File Surreply in Opposition to

Plaintiffs' Motion for Class Certification, ECF No. 19 [Docket No. 58] is **DENIED**.

DATED March 13, 2024.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

---

[2] Universal has filed a motion for leave to file a surreply in opposition to plaintiffs' motion
for class certification.  Docket No. 58.  In its motion for leave to file a surreply, Universal
argues that plaintiffs presented new material concerning the statute of limitation
arguments Universal made in its response.  *Id.* at 1–2.  Because the Court does not find
it appropriate to address the statute of limitations issue presented in Universal's
response, it will deny Universal's motion to file a surreply addressing those same
arguments.