IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01015-PAB-KAS

ANGELA VALDEZ,
RICKY ABEYTA,
MARK FRANKLIN,
MICHAEL CHILDS,
KEATE WRIGHT, and
ERIC SHORT,

      Plaintiffs,

v.

UNIVERSAL LOGISTICS OF VIRGINIA, LLC, d/b/a Estes Dedicated, a Virginia limited
liability company,

      Defendant.

---

# ORDER

---

The matters before the Court are Plaintiffs' Motion to Reconsider "Order" [ECF No. 70] Denying Plaintiffs' Motion for Class Certification [ECF No. 19] [Docket No. 71], Defendant's Motion for Summary Judgment [Docket No. 68], and Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Liability for Willful Violations of State Overtime and Rest Break Requirements [Docket No. 69]. Defendant responded to plaintiffs' motion to reconsider, Docket No. 74, and plaintiffs replied. Docket No. 77. Plaintiffs responded to defendant's motion for summary judgment, Docket No. 73, and defendant replied. Docket No. 75. Defendant responded to plaintiffs' cross-motion for partial summary judgment, Docket No. 72, and plaintiffs replied. Docket No. 76. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I.   **BACKGROUND**

A.  **Procedural History**

On May 19, 2023, plaintiffs Angela Valdez, Ricky Abeyta, Mark Franklin, and Michael Childs (collectively with plaintiffs Keate Wright and Eric Short,[1] the "plaintiffs") filed a motion for class certification.  Docket No. 19.  On August 31, 2023, plaintiffs filed an amended complaint, alleging that defendant Universal Logistics of Virginia, LLC ("Universal") violated the Colorado Wage Claim Act ("CWCA") by failing to pay its delivery drivers overtime, claim one, or to provide them with ten-minute rest breaks, claim two.  Docket No. 53 at 13–16, ¶¶ 96–114.

The Court denied plaintiffs' motion for class certification on March 13, 2024 because plaintiffs' proposed class failed to meet the numerosity requirement under Federal Rule of Civil Procedure 23(a)(1).  Docket No. 70 at 12.  On February 29, 2024, before the Court ruled on the class certification motion, the parties filed cross-motions for summary judgment.  Docket Nos. 68, 69.  The plaintiffs filed a motion for reconsideration as to the Court's order denying class certification on March 21, 2024. Docket No. 71.

B.  **Undisputed Facts[2]**

Universal operates a trucking business in the State of Colorado.  Docket No. 69 at 3, ¶ 1.  Universal is a subsidiary of Estes Express Lines ("Estes"), a Virginia-based interstate motor carrier that transports freight in interstate commerce throughout the

---

[1] Plaintiffs Keate Wright and Eric Short joined this litigation on August 31, 2023.  Docket No. 53.
[2] The following facts are undisputed unless otherwise indicated.

United States.  Docket No. 68 at 2, ¶ 1.  Universal provides home delivery services for 40 Home Depot stores in Colorado.  *Id.* at 3, ¶ 3.

On November 22, 2019, Colorado's Division of Labor Standards and Statistics (the "Division") entered amended Colorado Minimum Wage Order Number 35 ("Order 35"), which became effective January 1, 2020.  Docket No. 68 at 3, ¶ 6.  Order 35 stated that "interstate drivers" were exempt from all provisions of the order.  *Id.*, ¶ 7.  On January 22, 2020, the Division adopted Colorado Overtime and Minimum Pay Standards Order 36 ("COMPS Order 36"),[3] effective March 16, 2020.  *Id.* at 4, ¶ 9. COMPS Order 36 revised the definition of "interstate drivers" to consist only of drivers who crossed state lines.  *Id.*, ¶ 10.

Each of the plaintiffs worked for Universal in Colorado as a Class A Flatbed Home Delivery-L2L Driver between March 16, 2020 and December 31, 2020 (the "relevant period").  Docket No. 69 at 3, ¶ 2.  Plaintiffs were each paid a daily salary of between $190.00 and $200.00, plus the following non-discretionary bonuses: (1) $33.33 per day if they started on time and performed their route as designated; (2) $4.00 for every 15 minutes they were delayed by a customer or store, excluding the first 30 minutes of such a delay; and (3) $0.75 for every mile driven after the first 60 air miles. *Id.*, ¶ 3.  Universal paid its drivers pursuant to federal law.[4]  Docket No. 73 at 5, ¶ 4.

---

[3] Plaintiffs state that the Colorado Department of Labor and Employment changed the name of its regulations from Colorado Minimum Wage Order to Colorado Overtime and Minimum Pay Standards.  Docket No. 73 at 3, ¶ 7.

[4] In plaintiffs' response to Universal's motion for summary judgment, in a section of additional undisputed material facts, plaintiffs assert as an undisputed fact that "Universal simply paid the Plaintiffs . . . pursuant to federal law."  Docket No. 73 at 5, ¶ 4.  Universal denies this fact without citation, stating that "Universal paid Plaintiffs in accordance with what it understood to be the requirements of Colorado law, which Universal understood to be aligned with the FLSA."  Docket No. 75 at 3.  The Court's

Universal did not pay an overtime premium to its drivers for hours worked in excess of 40 in a week or 12 in a day prior to November 30, 2020.  Docket No. 69 at 3, ¶ 5. Universal had real-time monitoring capabilities through an application called "Mobile Link," and if its drivers failed to timely record their activities or missed a scheduled pick-up or delivery, their supervisor would contact them.  *Id.* at 4, ¶¶ 7–8.  Universal drivers did not cross state lines in the course of their employment.  *Id.*, ¶ 9.

Universal did not post or provide a copy of COMPS Order 36 or a poster of the COMPS order to drivers in 2020.  *Id.*, ¶ 11.  Universal's written policies did not notify drivers of their right to take paid 10-minute rest breaks.[5]  *Id.*, ¶ 10.  Plaintiffs did not take all the rest breaks they were entitled to under Colorado law.[6]  *Id*, ¶ 12.

_____

practice standards require that a denial of an asserted undisputed fact at summary judgment "shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial."  Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv. (emphasis omitted).  If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)–(3); Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ix.  Universal's denial of plaintiffs' assertion is unsupported, and the Court deems the fact that Universal paid its drivers in a manner it believed was consistent with federal law undisputed.

[5] Universal denies that plaintiffs' evidence supporting this asserted fact "states the proposed fact or supports an inference that the proposed fact is true."  Docket No. 72 at 5.  After reviewing the deposition testimony cited by plaintiffs, the Court finds that it supports plaintiffs' factual assertion.  In his deposition, the Vice President of Operations of Estes Logistics, Steve Sproles, testified that there is a written policy concerning payroll and operations at Estes.  Docket No. 69-2 at 12, 59:16–18.  Mr. Sproles testified that, while information about taking a ten-minute rest break "should be in the policy itself," he was unaware of anywhere in the policy that discussed taking rest breaks, as opposed to meal breaks, which the policy does discuss.  *Id.*, 59:19–60:23.  Because Universal does not deny this fact, and the fact is supported by plaintiffs' cited evidence, the Court deems this fact admitted.

[6] Plaintiffs assert that they did not take all the rest breaks they were entitled to under Colorado law "due to [Universal's] scheduling practices."  Docket No. 69 at 4, ¶ 12.

In late 2020, Universal was informed by one of its drivers that Universal was required to pay an overtime premium to drivers. *Id.* at 5, ¶ 13. Universal verified that it was required to pay overtime to drivers under COMPS Order 36. *Id.*, ¶ 14. Universal changed its pay structure to an hourly pay rate and began paying overtime premiums to its drivers on November 30, 2020. *Id.*, ¶ 15; Docket No. 68 at 4, ¶ 14. Universal did not meet with or have conversations with an attorney in relation to its obligation to pay its drivers all overtime owed under Colorado law prior to or during the period of March 16, 2020 through December 31, 2020.[7] Docket No. 69 at 5, ¶ 16. Universal did not meet with or have conversations with any individuals in relation to its obligation to provide all

---

Universal disputes that plaintiffs did not take breaks due to Universal's scheduling practices, and instead asserts that plaintiffs "voluntarily elected to skip breaks so they could end their workdays earlier." Docket No. 72 at 6. It is an undisputed fact that plaintiffs did not take all the rest breaks they were entitled to.

[7] Plaintiffs further assert that Universal did not conduct any analysis or perform any research in relation to its obligation to pay its drivers all overtime owed under Colorado law through December 31, 2020. Docket No. 69 at 5, ¶ 17. Universal disputes this fact. Docket No. 72 at 7 (citing Docket No. 69-15 at 3) ("Defendant confirmed that the information told to its senior manager over Colorado by a driver was valid. Thereafter, Defendant's payroll clerks pulled data and information from the Route Planner software and used it to calculate driver pay. Payroll clerks shared the information with field managers and made Defendant's hours worked data available to drivers so they could voice concerns over corrections if necessary."). It is an undisputed fact that Universal verified that it was required to pay overtime to drivers under COMPS Order 36. Docket No. 69 at 5, ¶ 14. Therefore, the Court finds that Universal's denial raises a dispute of fact as to whether Universal conducted analysis or performed research in relation to its obligation to pay its drivers all overtime owed under Colorado law through December 31, 2020.

rest breaks owed to plaintiffs.[8]  *Id.*, ¶ 18.  Universal did not notify plaintiffs of the reason

for the change in its pay structure in late 2020.[9]  Docket No. 73 at 5, ¶ 6.

## II.   LEGAL STANDARDS

### A.   <u>Motion for Reconsideration</u>

The Federal Rules of Civil Procedure do not specifically provide for motions for

reconsideration.  *See Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858,

861 (10th Cir. 1995).  Instead, motions for reconsideration fall within a court's plenary

power to revisit and amend interlocutory orders as justice requires.  *See Paramount*

*Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing

Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th

Cir. 1962).  In order to avoid the inefficiency which would attend the repeated re-

adjudication of interlocutory orders, judges in this district have imposed limits on their

broad discretion to revisit interlocutory orders.  *See, e.g., Montano v. Chao*, No. 07-cv-

00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule

60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v.*

*McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at

---

[8] This fact is also included as an additional undisputed fact in plaintiffs' response to Universal's motion to summary judgment.  Docket No. 73 at 5, ¶ 3.  In its reply, Universal denies this fact and states that plaintiffs' citation does not support this fact. Docket No. 75 at 3.  However, in its response to plaintiffs' motion for summary judgment, Universal admits this fact.  Docket No. 72 at 7.  The Court therefore deems this fact admitted.

[9]  In its reply, Universal denies this fact, stating, "Universal informed drivers of the change in its pay structure by beginning to pay drivers overtime."  Docket No. 75 at 3. However, Universal provides no support for this statement, and it is therefore not an effective denial of plaintiffs' asserted undisputed fact.  *See* Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  The Court deems this fact admitted.  Fed. R. Civ. P. 56(e)(2)–(3).

*1–2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order).  Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.  *See Echon v. Sackett*, No. 14-cv-03420-PAB-NYW, 2019 WL 8275344, at *2 (D. Colo. Feb. 12, 2019); *cf. Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) ("a motion for reconsideration is appropriate where the court has misapprehended the facts, a party' s position, or the controlling law").  Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### B. <u>Motion for Summary Judgment</u>

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To defeat a motion for summary judgment, the nonmovant's evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise," and "[u]nsubstantiated allegations carry no probative weight." *SEC v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022) (citations and alterations omitted).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).  Cross-motions for summary judgment must be viewed separately, and the denial of one does not necessitate the granting of the other.  *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016) (citations omitted).

## III.   ANALYSIS

### A.  Motion to Reconsider

The Court will first address plaintiffs' motion to reconsider its order denying class certification.  In its March 13, 2024 order, the Court determined that plaintiffs' proposed class failed to satisfy the prerequisites of Federal Rule of Civil Procedure 23(a).  Docket

No. 70 at 12; *see also* Fed. R. Civ. P. 23(a).  Rule 23(a)(1) requires plaintiffs seeking

class certification to "establish that the class is so numerous as to make joinder

impracticable."  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citation

omitted).  In the Tenth Circuit, there is no set formula for determining whether a

proposed class is large enough to meet the numerosity requirement.  *See id*.  Rather,

the question of numerosity is a fact-specific inquiry within the broad discretion of the

district court.  *Id*.  As part of its analysis, the Court considered several factors to

determine that plaintiffs' proposed class failed to meet the numerosity requirement,

namely, "class size, the geographic diversity of class members, the relative ease or

difficulty in identifying members of the class for joinder, the financial resources of class

members, and the ability of class members to institute individual lawsuits."  Docket No.

70 at 4–12; *Colorado Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 357 (D.

Colo. 1999).  The Court found that the "fact that there may be only 19 to 31 class

members remaining is not automatically disqualifying."  Docket No. 70 at 7.  However,

the Court determined that, although members of the putative class may have limited

financial resources, they are sufficiently incentivized to pursue their claims.  *Id.* at 12.

The Court concluded that this fact, combined with the ease of identifying class members

and the proven ability of class members to join this litigation, all weighed against class

certification.  *Id.* at 7–12.  The Court found that plaintiffs' proposed class was not so

numerous that joinder of all members was impracticable.  *Id.* at 12.

Plaintiffs make three arguments for reconsideration.  First, plaintiffs argue that

the Court relied, in part, on the mistaken assumption that plaintiffs had contact

information for all the members of the proposed class.  Docket No. 71 at 4–5 (citing

Docket No. 70 at 9) ("Universal has provided the Plaintiffs with the contact information for each potential class member.").  Plaintiffs state that this is not the case, but rather plaintiffs know the number of individuals Universal attempted to contact with offers to settle any claims these individuals might have against the company.  *Id.* at 5.  Plaintiffs also state that, of the thirty-one initial potential class members, four filed the original complaint in this case.  *Id.* at 3.  Plaintiffs claim that Universal sent offers to settle to twenty-two of the remaining twenty-seven potential class members, and that the five potential class members who did not receive an offer to settle do not have notice of this litigation.  *Id.*  Moreover, plaintiffs assert that of the twenty-two potential class members who were sent offers of settlement, which included checks as payment to settle, eight potential class members did not cash these checks.  *Id.* at 3–4.  Plaintiffs say that Universal refused to answer discovery requests to identify all the individuals who were sent checks.  *Id.* at 4.  Plaintiffs claim that, because only some of the individuals Universal attempted to contact took any action, and because Universal has not disclosed any more information about the status of its offers to settle, "there is a high probability that none of the remaining 13 class members are identifiable because their current contact information is unknown to either [p]arty."  *Id.* at 5.

Second, plaintiffs argue that denial of class certification without notice of this class action would violate the constitutional rights of some of its proposed class members.  *Id.*  Plaintiffs contend that those members of the proposed class who took no action in response to Universal's offer to settle with them failed to act because they likely did not receive Universal's offer to settle, which would have provided them notice of this case.  *Id.*  They assert that "the Due Process Clause . . . guarantees unnamed

class members the right to notice of a settlement," *id.* (quoting *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 693 (D. Colo. 2014)), and that "the court must direct to class members the best notice that is practicable under the circumstance, including individual notice to all members who can be identified through reasonable effort." *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). Plaintiffs allege that the individuals who have neither joined this litigation nor accepted Universal's offer of settlement have not received the notice they are entitled to. *Id.* at 5–6. Plaintiffs therefore request that the Court reconsider its denial of class certification in order to provide these individuals with notice of the class action and any settlements it produces. *Id.*

Finally, plaintiffs maintain that the Court should reconsider its denial of class certification because the statute of limitations for claims brought by individuals who have not joined this litigation began to run on April 12, 2024. *Id.* at 6. Plaintiffs state that, because these individuals were paid weekly, each week that passes from April 12, 2024 limits the damages available to them. *Id.*

The Court finds that plaintiffs' arguments individually and collectively fail to demonstrate grounds for the Court to reconsider its denial of class certification. Plaintiffs have identified no intervening change in controlling law or new evidence previously unavailable that alters the Court's analysis. *See Servants of Paraclete*, 204 F.3d at 1012 (citation omitted) ("Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."). Nor have plaintiffs shown that manifest injustice would occur without revision of the Court's order.

11

First, even if plaintiffs do not have the contact information for every member of their proposed class, plaintiffs provide no evidence that such information cannot be found.  Plaintiffs also fail to address how this fact impacts the Court's weighing of the *Taco Bell* factors such that the Court should reach a different conclusion on the issue of numerosity.  As such, plaintiffs have failed to demonstrate manifest injustice based on the fact that the Court assumed that plaintiffs had the contact information for members of the proposed class.

Second, plaintiffs misunderstand the requirements of Rule 23 and the Due Process Clause.  Rule 23(c)(2)(A) states that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  Similarly, Rule 23(c)(2)(B) provides, "[f]or any class certified under Rule 23(b)(3) – or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) – the court must direct to class members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  A precondition of these requirements is that the court has already certified the class or that the class be proposed for the purposes of settlement.  Here, the Court has denied class certification and plaintiffs did not propose the class for purposes of settlement.  Therefore, the preconditions for the applicability of Rule 23(b) and 23(c) have not been met and there is no injustice in the Court declining to provide notice of denying class certification.  For the same reasons, notice under the Due Process Clause is inapplicable because denial of class certification does nothing to impede an individual's right to proceed in court.  *Cf. DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005) (requiring notice under the Due

Process Clause for class-wide settlement).  Moreover, plaintiffs provide no authority for the proposition that a group of similarly situated individuals have a right to notice of pending class action litigation based on the fact that an employer has contacted some of these individuals with offers of settlement.

Finally, plaintiffs have failed to show that individuals not part of this litigation will suffer manifest injustice by operation of the statute of limitations.  The events that precipitated this litigation began on March 16, 2020 and continued through November 30, 2020, at which point Universal changed its pay structure to a daily rate and began to pay its drivers overtime.  Docket No. 68 at 4, ¶¶ 9, 14.  Universal's alleged failure to pay overtime has been the subject of two federal court cases.  Individuals who have not joined this litigation had over three years to investigate Universal's change in pay policy and to bring their claims (which would otherwise have exceeded the CWCA's three-year statute of limitations for willful violations but for the prior court case tolling the statute of limitations).  That the statute of limitations has now begun to run on the claims of these individuals is not manifest injustice.  *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[S]tatutory limitation periods are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.").  Because plaintiffs have failed to demonstrate that reconsideration of the Court's order denying class certification is

necessary to prevent manifest injustice, the Court will deny plaintiffs' motion to reconsider.

**B.  Motions for Summary Judgment**

The Court will next address the parties' cross-motions for summary judgment.  In their motion, plaintiffs ask the Court to:

> (1) [f]ind[ ] that [Universal] is liable for failing to pay an overtime premium to the Plaintiffs and the putative class for all hours worked in excess of 40 in a week and 12 in a day between March 16, 2020, and November 30, 2020, in violation of the Colorado Law in an amount to be determined at trial; (2) [f]ind[ ] that [Universal] is liable for failing to authorize and permit the Plaintiffs and the putative class to take paid 10-minute rest breaks for every four hours of work, or major portions thereof, between March 16, 2020 and December 31, 2020, in violation of . . . Colorado Law in an amount to be determined at trial; (3) [f]ind[ ] that [Universal's] violations of Colorado Law were willful; (4) [f]ind[ ] that the three-year statute of limitations applies to the Named Plaintiffs' claims brought on behalf of the putative class members; [and] (5) [r]efer[ ] Counts I and II of the Plaintiffs' First Amended Complaint to trial to decide damages.

Docket No. 69 at 14.

In its motion for summary judgment, Universal asks the Court to find that any claims brought by plaintiffs on behalf of a class be subject to a two-year statute of limitations and to find that the three-year statute of limitations for willful violations of the CWCA is inapplicable.  Docket No. 68 at 6–11.

The parties' arguments in their cross-motions for summary judgment regarding the statute of limitations for putative class members are only relevant if the Court reconsiders the issue of class certification and certifies the class.  *See* Docket No. 75 at 1 ("The issue raised by Universal's Motion – whether Plaintiffs' claims are governed by the Colorado Wage Claims Act (CWCA)'s default two-year limitation period or the three-year limitation period for willful violations – was only relevant to whether Plaintiffs' proposed class could be certified.  Universal raised the issue in its Motion because

Plaintiffs maintained that the issue was a merits question for trial.  Now that the Court has denied Plaintiffs' Motion for Class Certification, the statute of limitations issue is moot and the Court need not resolve it.").  Because the Court will not reconsider its motion denying class certification, the issue of whether a two or three-year statute of limitations would apply to class claims is moot.  The Court will therefore deny these portions of the parties' motions regarding the statute of limitations.  As discussed below, the Court will also deny the parties' motions to the extent they seek a ruling on the issue of whether any violations of the CWCA by Universal were willful, irrespective of the applicable statute of limitations.

### 1. Overtime

Plaintiffs seek summary judgment on the issue of whether Universal violated Colorado law by failing to pay plaintiffs overtime, which is part of their first claim for relief.[10]  Docket No. 69 at 7.

Plaintiffs claims are predicated on Universal's alleged violations of the CWCA, Colo. Rev. Stat. § 8-4-101, *et. seq.*  Docket No. 53 at 10–15, ¶¶ 73–108.  The CWCA is "implemented by Colorado Minimum Wage Orders."  *Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, 1182 (D. Colo. 2018) (citing 7 Colo. Code Regs. § 1103-1 (2018)).  "The Colorado Department of Labor and Employment is authorized to promulgate a new Wage Order each year."  *Id.* (citing Colo. Rev. Stat. tit. 8, arts 1, 4, 6, and 12; Colo. Const. art. XVIII, § 15).  "Each Wage Order supersedes the previous year's order, establishes a minimum wage, and regulates wages, hours, working

---

[10] Plaintiffs are not seeking summary judgment as to their damages on claim one.  *See* Docket No. 69 at 14.

conditions and procedures for certain employers and employees for work performed within the boundaries of the state of Colorado." *Id.* (citation and quotation omitted). Section 1103-1:18 states that "an employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with reasonable attorney fees and court costs." *Id.* (citing Colo. Code Regs. § 1103-1:18) (alterations omitted). "For a plaintiff to recover on a claim under the Colorado Wage Claim Act," the plaintiff must establish: "1. Plaintiff was an employee of defendant; 2. Defendant was an employer; and 3. Defendant failed to pay plaintiff the proper wages owed for all hours plaintiff worked." *Echon v. Sackett*, No. 14-cv-03420-PAB-NYW, 2019 WL 8275344, at *5 (D. Colo. Feb. 12, 2019), *aff'd*, 809 F. App'x 468 (10th Cir. 2020) (unpublished); *see also Irigoyen-Morales v. Concreations of Colorado, Inc.,* No. 15-cv-02272-LTB-KLM, 2016 WL 9735757, at *2 (D. Colo. June 30, 2016) ("the CWCA supports a claim for overtime pay owed under the FLSA"); *Perez v. Pinon Mgmt., Inc.*, No. 12-cv-00653-MSK-MEH, 2013 WL 1149567, at *7 (D. Colo. Mar. 19, 2013) ("To prove a claim for violation of the FLSA's overtime pay requirements, Ms. Perez must allege: (i) that the Defendant is an employer as defined by the Act; (ii) that she is an employee as defined by the Act; (iii) that the Defendant employed her services; (iv) for more than 40 hours in a single work week; and (v) that she did not receive compensation at a rate of 1.5 times her normal hourly rate for the hours she worked over 40 in that week.").

During the period relevant to this litigation, Colorado Department of Labor and Employment regulations provided that "[e]mployees shall be paid time and one-half of the regular rate of pay for any work in excess of any of the following . . . : (A) 40 hours

per workweek; [or] (B) 12 hours per workday."  7 Colo. Code Regs. § 1103-1:4.1.1 (2020) ("Rule 4").[11]  During the same period, Rule 2 exempted interstate transportation workers from the overtime pay requirements and defined an interstate transportation worker as "an employee who is a driver, a driver's helper, or a loader or mechanic of a motor carrier, if the employee crosses state lines in the course of his or her work."  *Id.* § 1103-1:2.2.6(A) (2020).  Plaintiffs claim the undisputed facts show that Universal violated these regulations.  Docket No. 69 at 7.

In their summary judgment motion, plaintiffs assert that "[t]he Drivers regularly worked in excess of 40 hours in a week and occasionally 12 hours in a day."  *Id.* at 3, ¶ 4.  Universal denies this asserted fact on the grounds that the evidence plaintiffs cite for support is not admissible evidence.  Docket No. 72 at 4; *see* Fed. R. Civ. P. 56(c)(1)(B).  Universal states that the "evidence lacks any foundation or explanation necessary to draw the inferences Plaintiffs seek."  Docket No. 72 at 4.  The evidence plaintiffs cite for the proposition that they worked over 40 hours a week during the relevant period is a heavily redacted table.  Docket No. 69-3.  The table has a column labeled with a month and year, e.g. "March 2020," on the left-hand side.  *Id.* at 1.  The top row of the table identifies certain weeks within that month, e.g., "W1Total."  *Id.*  The table then lists what the Court presumes to be hourly totals of work for a given week,

---

[11] The Division's wage orders, i.e. the COMPS orders, include multiple sections.  Within these regulations, the individual sections are referred to as "Rules."  *See*, *e.g.*, 7 Colo. Code Regs. § 1103-1:7.4.1 (2020).  These rules are generally consistent throughout the various COMPS orders, i.e. both Order 35 and COMPS Order 36 have a Rule 4.  For purposes of resolving the parties' motions for summary judgment, the Court refers to Rules 2, 4, 5, and 7 as they appear in COMPS Order 36.

such as "51.75." *Id.*  However, on its face, the table provides no context for what these numbers refer to.  *Id.*  The other information in this table is redacted.  *Id.*

In their reply, plaintiffs explain that this table, as redacted, was produced by Universal.  Docket No. 76 at 3.  Plaintiffs claim that counsel for Universal represented, "I am providing a table that matches the tabs on the hours summary (UNIV001992) with the corresponding pay slips and weekly settlement sheets.  As you will see, the hours summary contains one table for each of the thirty putative class members." *Id.* (quoting Docket No. 76-1 at 1).  Plaintiffs state that Universal "redacted all personal identifying information from the pay slips noted in the . . . email, but for the last 4 digits of the employee's social security number.  Plaintiffs were able to identify which tab in UNIV001992 applied to them based on this. . . .  Pursuant to Defendant's own summary of the hours worked, each of the putative class members, inclusive of the Plaintiffs, as denoted on pages 1, 7, 10, 24, 28, and 30 of [Docket No. 69-3][12] regularly worked more than 40 hours in a week." *Id.* (footnote added).

"It is well settled in this circuit" that courts "can consider only admissible evidence in reviewing . . . summary judgment." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).  "This does not mean that evidence must be submitted 'in a form that would be admissible at trial.'" *Trevizo*, 455 F.3d at 1160 (quoting *Celotex*, 477 U.S. at 324).  Nonetheless, "the content or substance of the evidence must be admissible." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (citation omitted).

---

[12] Plaintiffs cite Docket No. 69-1; however, this document is a single page and provides a table of Estes' pay structure for drivers in Denver.  *See* Docket No. 69-1.  As such, the Court construes plaintiffs' reply as explaining the contents of Docket No. 69-3.

Here, plaintiffs have not produced admissible evidence that they worked more than 40 hours in a week or 12 hours in a day because the table they cite as evidence for this proposition does not establish the hours the plaintiffs purportedly worked. There is no indication that the numbers in the table represent hours worked by a Universal employee. The table does not identify which plaintiffs worked which hours and, as a result, does not show that they worked more than 40 hours in a week or 12 hours in a day. Furthermore, plaintiffs' attempt to lay a foundation for this evidence in their reply is improper because it fails to give Universal any opportunity to respond. Even if the Court considered plaintiffs' attempt to lay a foundation for the table, the foundation is inadequate. Plaintiffs do not provide a declaration or affidavit that establishes what the table is. Rather, plaintiffs' reply asserts only that plaintiffs were able to identify themselves in the table produced by Universal by cross-referencing the last four digits of their social security numbers, as "denoted on pages 1, 7, 10, 24, 28, and 30" of the table. Docket No. 76 at 3. Plaintiffs' explanation in their reply brief fails to provide the necessary link between the table and the admissibility of its contents because the Court still has no ability to tell, looking at the table, what data corresponds to which plaintiff. The Court therefore finds that whether plaintiffs worked more than 40 hours in a week or 12 hours in a day is disputed.[13] Because it is disputed that plaintiffs worked either more

_____

[13] Plaintiffs' only other reference to the hours plaintiffs worked is in the argument section of their motion, where they assert that "[i]t is undisputed that the Drivers were expected to work a 54-hour workweek on average." Docket No. 69 at 7 (citing Docket No. 69-2 at 10, 37:10–38:3). However, this fact is not included in plaintiffs' statement of undisputed facts as required by the Local Rules and the Court's practice standards. *See* D.C.COLO.LCivR 56.1(a); Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b. As such, Universal had no obligation to respond to this assertion, and the Court finds that this is not an undisputed fact.

than 40 hours in a week or 12 hours in a day, and because a violation of Rule 4 requires an employer to fail to pay "time and one-half of the regular rate of pay" only to employees who work more than "(A) 40 hours per workweek; [or] (B) 12 hours per workday," 7 Colo. Code Regs. § 1103-1:4.1.1 (2020), plaintiffs have failed to prove an essential element of their claim for failure to pay overtime in violation of Colorado wage and hour law.  Accordingly, the Court will deny plaintiffs' motion for summary judgment as to claim one.[14]

### 2. *Rest Breaks*

Plaintiffs seek summary judgment as to Universal's failure to provide rest breaks in violation of Colorado wage and hour law, which is an essential element of their second claim for relief.  Docket No. 69 at 8; Docket No. 53 at 13.

During the period relevant to this litigation, Colorado Department of Labor and Employment regulations provided that "[e]very employer shall authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof, for all employees."  7 Colo. Code Regs. § 1103-1:5.2 (2020) ("Rule 5").  Rule 5 further provided that, "[w]hen an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation.  Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided.  Therefore, a failure by an employer to authorize and permit a 10-minute

---

[14] Even if plaintiffs could prove that it was undisputed that they worked more than 40 hours in a week or 12 hours in a day, plaintiffs admit that there would still need to be a trial to determine how many uncompensated hours each plaintiff worked.  *See* Docket No. 69 at 14.

compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay." *Id.*, § 1103-1:5.2.4.

It is undisputed that plaintiffs were each paid a daily salary of between $190.00 and $200.00. Docket No. 69 at 3, ¶ 3. Universal had real-time monitoring capabilities through an application called "Mobile Link" and, if its drivers failed to timely record their activities or missed a scheduled pick-up or delivery, their supervisor would contact them. *Id.* at 4, ¶¶ 7, 8. Universal drivers did not cross state lines in the course of their employment. *Id.*, ¶ 9. Universal's written policies did not notify its drivers of their right to take paid 10-minute rest breaks. *Id.*, ¶ 10. Universal did not post or provide a copy of COMPS Order 36 or a poster of the COMPS order to drivers in 2020.[15] *Id.*, ¶ 11.

---

[15] Rule 7 of COMPS Order 36 states that:

> Every employer subject to the COMPS Order must display a COMPS Order poster published by the Division in an area frequented by employees where it may be easily read during the workday. If the work site or other conditions make a physical posting impractical (including private residences employing only one worker, and certain entirely outdoor work sites lacking an indoor area), the employer shall provide a copy of the COMPS Order or poster to each employee within his or her first month of employment, and shall make it available to employees upon request. An employer that does not comply with the above requirements of this paragraph shall be ineligible for any employee-specific credits, deductions, or exemptions in the COMPS Order, but shall remain eligible for employer- or industry-wide exemptions, such as exempting an entire employer or industry from any overtime or meal/rest period requirements in Rules 4-5.

7 Colo. Code Regs. § 1103-1:7.4.1 (2020). There are no allegations in plaintiffs' complaint regarding Universal's failure to comply with Rule 7 and plaintiffs do not bring a claim for Universal's failure to comply with Rule 7. Therefore, the Court finds that it is unnecessary to consider whether Universal violated Rule 7.

Plaintiffs did not take all the rest breaks they were entitled to under Colorado law.  *Id*,

¶ 12.[16]

Plaintiffs claim these facts show that Universal violated Rule 5 by failing to
provide plaintiffs 10-minute compensated rest breaks.  *Id.* at 8–10.  Plaintiffs emphasize
that Universal had no written policy regarding plaintiffs' right to take rest breaks and that
"[t]here is no evidence that [Universal] authorized or permitted drivers to take rest
breaks in 2020."  *Id.* at 9–10.  Plaintiffs maintain that Universal's pay structure – i.e.,
paying a daily rate, as opposed to an hourly rate – incentivized plaintiffs to forego rest
breaks because they could earn more money for less time worked, which is a violation
of Colorado law.  *Id.* at 10.  To support this proposition, plaintiffs cite interpretive
guidance by the Colorado Department of Labor and Employment, which states that:

> Employers must authorize and permit their employees to take all required rest
> periods.  This *does not* mean that employees must actually *have* a rest period, if
> they choose to keep working.  However, the choice to skip a rest period must be
> entirely voluntary and made without employer coercion.
>
> If an employer asserts that an employee had permission to take a rest period, but
> in reality the employee was unable or discouraged to do so, then a rest period
> was not "authorized and permitted."  "Authorize" means formal permission to take
> a rest period, but "permit" means, given workplace realities, the employee
> *actually was able* to take a rest period *without repercussions*.  A handbook,
> policy, or schedule that appears to allow a rest period is not *conclusive* evidence
> a rest period was authorized or permitted, *if* the employee provides evidence that
> workplace realities created either pressure to skip, or practical obstacles to

---

[16] Plaintiffs make other factual assertions in the argument section of their motion.
Plaintiffs claim that Universal "constantly added to their schedules, extending the length
of their day" such that plaintiffs could not choose when to end their workday.  Docket
No. 69 at 8–9.  Plaintiffs assert that "Universal admitted that it made no other efforts,"
aside from the company's written policies, "to ensure that the Drivers were notified of
their right to compensated 10-minute rest breaks."  *Id.* at 9.  These facts were not
presented in plaintiffs' statement of undisputed facts.  *Id.* at 3–5.  As such, Universal
had no obligation to respond to these facts and they are not considered undisputed for
purposes of this motion.  *See* D.C.COLO.LCivR 56.1(a); Practice Standards, (Civil
Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.

taking, a rest period.  Possible evidence an employer did not in reality permit rest periods may include that the employer:

> 1) pressured an employee not to take rest periods;
>
> 2) knew an employee's workload, schedule, deadline, or quota made rest periods infeasible; and/or
>
> 3) did not adequately inform employees that rest periods were paid.

*Id.* (citing Div. of Lab. Standards and Stats., Colo. Dep't of Lab. and Emp., *Interpretive Notice and Formal Opinion ("INFO") #4: Meal and Rest Periods* 2 (last updated Mar. 23, 2022), https://cdle.colorado.gov/dlss-home-page/interpretive-notice-and-formal-opinions-infos-and-other-published-guidance).  Plaintiffs further rely on two California cases, *Brinker Restaurant Corp. v. Superior Court*, 273 P.3d 513, 546 (Cal. 2012), and *Cicairos v. Summit Logistics*, 35 Cal. Rptr. 3d 243, 253 (Cal. Ct. App. 2005), which were cited with approval in the interpretive guidance.  Docket No. 69 at 10; Div. of Lab. Standards and Stats., Colo. Dep't of Lab. and Emp., *Interpretive Notice and Formal Opinion ("INFO") #4: Meal and Rest Periods* 2 n.5, 6 (last updated Mar. 23, 2022).  In *Brinker Restaurant Corp*, the California Supreme Court held that California rest break regulations "do not countenance an employer's exerting coercion against the taking of, creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks" and that an "informal anti-meal-break policy enforced through ridicule or reprimand would be illegal."  *Brinker Restaurant Corp*, 273 P.3d at 536 (citation, quotation, and alterations omitted).  Both plaintiffs and the Division purport to quote *Cicairos* for the proposition that, "as long as an employer authorizes and permits . . . rest periods (and clearly communicates this authorization and permission), the employer will not be liable . . . if the employees fail to take . . . rest breaks, provided that the

employees did not forego the full rest period as a result of . . . coercion or encouragement."[17]  *Interpretive Notice and Formal Opinion ("INFO") #4: Meal and Rest Periods* 2 n.6 (last updated Mar. 23, 2022); *see also* Docket No. 69 at 10.  Plaintiffs maintain that Universal's daily pay structure exerted coercive pressure on them to skip rest breaks and that, because Universal's written policies do not discuss rest breaks, Universal failed to clearly communicate Universal's authorization and permission for plaintiffs to take rest breaks.  Docket No. 69 at 9.

Universal responds that plaintiffs have produced insufficient evidence that Universal failed to authorize and permit plaintiffs to take rest breaks.  Docket No. 72 at 12.  Universal maintains that plaintiffs were permitted to take rest breaks and that Universal "cannot be liable if [p]laintiffs simply worked continuously so they could end their days earlier."  *Id.* (citation omitted).  While Universal acknowledges that there was no written policy permitting rest breaks, it asserts that a written policy is not required to comply with its obligations under Rule 5.  *Id.* at 11.  Universal similarly relies on *Brinker Restaurant Corp.* for the proposition that a rule, such as Rule 5, is satisfied so long as an employer "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted . . . break, and does not impede or discourage them from doing so."  *Id.* at 11 (citing *Brinker Restaurant Corp*, 273 P.3d at 536–37).  Universal argues that the undisputed facts do not show that

---

[17] The quoted language does not appear in *Cicairos*, 35 Cal. Rptr. 3d at 253.  Rather, as indicated in the Division's footnote in the INFO letter, the language appears to come from a now withdrawn Opinion Letter by the California Department of Industrial Relations.  *See* Colo. Dep't of Lab. and Emp. *Interpretive Notice and Formal Opinion ("INFO") #4: Meal and Rest Periods* 2 n.6 (last updated Mar. 23, 2022) ("*Cicairos* . . . quoting Dept. of Industrial Relations, DLSE Opinion Letter 2001.04.02"); *see also* Cal. Dep't of Indus. Rels., Opinion Letter (April. 2, 2001) (withdrawn).

it failed to meet this requirement.  *Id.* at 12.  Universal also insists that, even if plaintiffs' general allegations regarding Universal's pay and policies are true, plaintiffs have failed to identify specific rest breaks that they were denied, which Universal maintains is necessary for the Court to find it liable for a violation of Rule 5.  *Id.* at 12–13.

Plaintiffs' rest break claims turn on the interpretation of the phrase "authorize and permit."  7 Colo. Code Regs. § 1103-1:5.2.  In particular, the question is whether Universal's daily pay structure, its failure to provide a copy of COMPS Order 36 to plaintiffs, its failure to have a written policy regarding rest breaks, and its ability to monitor and contact plaintiffs if they missed a scheduled pick-up[18] constituted a failure to authorize and permit rest breaks.

First, the Court finds that a failure to provide a copy of COMPS Order 36 to plaintiffs is not a violation of Rule 5, which governs Universal's obligations to provide rest breaks.  Rule 7 of COMPS Order 36 states that "[e]very employer subject to the COMPS Order must display a COMPS Order poster published by the Division in an area frequented by employees" or "shall provide a copy of the COMPS Order or poster to each employee within his or her first month of employment."  7 Colo. Code Regs. § 1103-1:7.4.1 (2020).  If an employer fails to do so, it "shall be ineligible for any employee-specific credits, deductions, or exemptions in the COMPS Order."  *Id.* Plaintiffs do not argue that Universal's violation of Rule 5 is based on the fact that Universal failed to comply with Rule 7 such that Universal is ineligible for an exemption

---

[18] Plaintiffs appear to argue that, by having the ability to monitor plaintiffs and by contacting plaintiffs if they missed a scheduled pick-up or delivery, Universal exerted coercive pressure on plaintiffs to skip rest breaks in order to meet the deadlines set by their pick-up and delivery schedules.  *See* Docket No. 69 at 4, ¶ 8.

that ordinarily would have permitted Universal not to provide rest breaks. Rather, plaintiffs argue that Universal exerted coercive pressure on them to skip rest breaks, in violation of Rule 5. Docket No. 69 at 9. Rule 5 does not state that Universal is required to provide plaintiffs copies of COMPS Order 36 or that failing to do so constitutes a failure to provide plaintiffs with rest breaks. 7 Colo. Code Regs. § 1103-1:5.2. As such, plaintiffs have not shown that Universal's failure to provide them with copies of COMPS Order 36 constituted a failure by Universal to authorize or permit rest breaks. Therefore, plaintiffs have not demonstrated that, by failing to provide copies of COMPS Order 36, Universal forced plaintiffs to skip rest breaks such that Universal failed to pay plaintiffs all the wages plaintiffs are owed for the hours they worked. *Echon*, 2019 WL 8275344, at *5. Accordingly, plaintiffs are not entitled to summary judgment on this ground.

Next, the Court finds that Universal's failure to have a written policy regarding rest breaks did not constitute a failure to authorize or permit rest breaks. Rule 5 states that employers "shall authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof, for all employees." 7 Colo. Code Regs. § 1103-1:5.2. Rule 5 does not define what constitutes authorization or permission to take rest breaks. The regulation is silent about whether an employer is required to memorialize that authorization in a written policy. The Division's interpretive guidance suggests that a written policy is not required. For example, having a written policy does not prove an employer's compliance with Rule 5. Thus, a written policy such as a handbook, policy, or schedule, is not "conclusive evidence a rest period was authorized or permitted." Colo. Dep't of Lab. and Emp. *Interpretive Notice and Formal Opinion*

26

("INFO") #4: Meal and Rest Periods 2 (last updated Mar. 23, 2022).  Rather, what is important is compliance, i.e. that the employer authorizes and permits rest breaks. Thus, it seems doubtful that a written policy is required.  As such, the Court finds that Universal's not providing plaintiffs with a written policy regarding rest breaks was not a failure to authorize or permit rest breaks.

Next, the fact that Universal had real-time monitoring of their drivers and would contact them if they failed to make a scheduled pick-up does not, by itself, prove that plaintiffs were unable to take rest breaks.  *See* Docket No. 69 at 4, ¶¶ 7, 8.  Rather, at trial, plaintiffs could use such evidence to argue that Universal did not authorize and permit plaintiffs to take rest breaks because its monitoring pressured drivers not to take breaks.  Plaintiffs have not shown any undisputed facts that plaintiffs were pressured not to take rest breaks.  As such, there is a genuine dispute of material fact as to whether Universal's monitoring capabilities forced plaintiffs to skip breaks.

For the same reason, plaintiffs have not demonstrated that Universal's choice to pay drivers on a daily basis caused plaintiffs not to take rest breaks.  Plaintiffs provide no authority for the proposition that paying employees on a daily basis unlawfully incentivizes them to skip rest breaks.  Both parties rely on *Brinker Restaurant Corp*, 273 P.3d at 536–37.  Docket No. 69 at 10; Docket No. 72 at 11.  In *Brinker*, the court held that "[p]roof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability.  On the other hand, an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways

27

that omit breaks." *Brinker Restaurant Corp*, 273 P.3d at 536.  "The employer satisfies [its] obligation [to provide meal breaks] if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. . . .  On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed." *Id.* at 536–37.  At trial, plaintiffs could argue that Universal's daily pay structure pressured employees to skip breaks. However, plaintiffs have not shown any undisputed facts that plaintiffs were impeded or discouraged from taking rest breaks on summary judgment.  Therefore, plaintiffs have not shown that Universal forced plaintiffs to skip rest breaks such that Universal failed to pay plaintiffs all the wages plaintiffs are owed for the hours they worked.

The undisputed facts show that plaintiffs were paid a daily salary, that plaintiffs did not take every break they were entitled to, and that Universal never provided plaintiffs with written notice of their ability to take rest breaks.  Docket No. 69 at 3–4, ¶¶ 3, 7–12.  This is insufficient to show that Universal failed to authorize and permit plaintiffs to take rest breaks.  As such, plaintiffs have failed to establish an essential element of their CWCA claims as to rest breaks and are not entitled to summary judgment.  *Echon*, 2019 WL 8275344, at *5.

Finally, it is not enough for plaintiffs to assert that "[t]here is no evidence that [Universal] authorized or permitted drivers to take rest breaks in 2020."  Docket No. 69 at 10.  Rather, plaintiffs must show that it is an undisputed fact that Universal did *not* authorize or permit drivers to take rest breaks.  Plaintiffs assert that it is Universal's burden to prove that they did authorize and permit breaks.  Docket No. 76 at 5 (citing

*Mumby v. Pure Energy Servs. (USA), Inc.*, 2009 WL 10700277, at *2 (D. Wyo. Dec. 2, 2009) ("When the non-moving party bears the burden of proof at trial, the burden then shifts to it to demonstrate the existence of an essential element of its case. To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial.") (internal citation omitted)). Plaintiffs' reliance on *Mumby* is misplaced; *Mumby* concerned the defendant's assertions of a statute of limitations affirmative defense, which was the defendant's burden to prove. *Id.* at *1–2. Here, plaintiffs provide no support for the proposition that they do not have the burden of proof on their CWCA claims. Plaintiffs have not shown that Universal failed to authorize or permit rest breaks. As such, the Court will deny plaintiffs' motion for summary judgment as to plaintiffs' second claim, failure to provide rest breaks in violation of Colorado wage and hour law.

### 3. *Willful Violations*

The parties ask the Court to determine whether any violations of Colorado law by Universal were willful. *See* Docket No. 69 at 11–13; Docket No. 68 at 8–11. The motions seek a determination on whether a two or three-year statute of limitations would apply to claims brought by members of plaintiffs' proposed class based on willful violations of the CWCA. However, the cross-motions for summary judgment were filed before the Court denied plaintiffs' motion for class certification. Docket Nos. 68, 69. Both parties appear to agree that if the Court denies plaintiffs' motion for reconsideration, the issue of willfulness is moot. *See* Docket No. 73 at 6 ("The Plaintiffs believe the Court correctly determined this issue in its Order denying the Motion for Class Certification [ECF No. 70], and but for the Plaintiffs' Motion to Reconsider [ECF

No. 71], this argument would be mooted."); Docket No. 72 at 13 ("The Court's denial of Plaintiffs' Motion for Class Certification renders the issue moot.").  While the issue of whether Universal willfully violated Colorado law may affect the damages available to plaintiffs, should they prove their claims, the Court declines to resolve an issue beyond the scope of the parties' briefing.  *See* Colo. Rev. Stat. § 8-4-109(c) (2020) ("If the employee can show that the employer's failure to pay is willful, the penalty required under paragraph (b) of this subsection (3) shall increase by fifty percent.").  As such, the Court will deny the parties' cross-motions for summary judgment as to whether Universal willfully violated the CWCA.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Reconsideration "Order" [ECF No. 70] Denying Plaintiffs' Motion for Class Certification [ECF No. 19] [Docket No. 71] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 68] is **DENIED**.  It is further

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Liability for Willful Violations of State Overtime and Rest Break Requirements [Docket No. 69] is **DENIED**.

DATED September 30, 2024.

BY THE COURT:

Philip A. Brimmer
Chief United States District Judge